**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| BARRINGTON MYVETT, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 08-1284 (RMU) |
| | : | | |
| v. | : | Re Document Nos.: | 5, 8 |
| | : | | |
| THOMAS H. WILLIAMS *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

### GRANTING THE DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT AND DENYING AS MOOT THE DEFENDANTS' MOTION TO DISMISS

### I.   INTRODUCTION

This matter is before the court on the defendants' motion to dismiss the plaintiff's amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The plaintiff brings this action against Thomas H. Williams, the Associate Director for the Court Services and Offender Supervision Agency of the District of Columbia ("CSOSA"), Carol Holloway, the Deputy Director of Security at CSOSA, Van Spivey, the Drug Testing Operations Manager at CSOSA, and Juanita Barnes, a CSOSA Drug Testing Technician. Am. Compl. ¶ 4. The plaintiff, a former Drug Testing Technician at CSOSA, alleges that the defendants unjustifiably had him arrested at CSOSA and subsequently wrote false statements about him. *See generally* Am. Compl. The Chief of the Civil Division of the United States Attorney's Office for the District of Columbia has certified that, at all relevant times, the defendants were acting within the scope of their employment.

Because the court concludes that the plaintiff has failed to plead sufficient facts that, if true, would show that the defendants were acting outside the scope of their employment, the

court substitutes the United States as the defendant party with respect to the four common law tort claims pursuant to 28 U.S.C. § 2679(d)(1). In addition, because the plaintiff has also failed to plead that he exhausted his administrative remedies prior to commencing this action, the court dismisses the plaintiff's common law tort claims pursuant to 28 U.S.C. § 2675(a). The plaintiff also brings constitutional claims under 42 U.S.C. § 1983 ("§ 1983") alleging a violation of his Fourth and Fourteenth Amendment rights, which the court dismisses for lack of state action. Finally, the court dismisses, without prejudice, the plaintiff's claims for retaliation, hostile work environment and civil rights violations under § 1983 because Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000 *et seq.*, and the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("§ 1981"), are the exclusive remedies for federal workplace discrimination claims.[1]

## II. BACKGROUND

### A. Factual History[2]

From Septembers 2004 to May 2008 the plaintiff was employed as a drug testing technician with CSOSA, Am. Compl. ¶¶ 3, 10, an independent executive branch agency, Defs.' Mot. to Dismiss the Pl.'s Am. Compl. ("Defs.' Mot.") at 1 n.1.

In August 2006 the plaintiff filed an informal Equal Employment Opportunity ("EEO")

---

[1] Because the plaintiff filed an amended complaint after the defendants moved to dismiss the original complaint, the court denies as moot the defendants' motion to dismiss the original complaint. *See P & V Enters. v. U.S. Army Corps of Eng'rs*, 466 F. Supp. 2d 134, 135 n.1 (D.D.C. 2006).

[2] For the purposes of this memorandum opinion the court must treat the complaint's factual allegations – including mixed questions of law and fact – as true and draw all reasonable inferences therefrom in the plaintiff's favor. *Macharia v. United States*, 334 F.3d 61, 64, 67 (D.C. Cir. 2003); *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003); *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

complaint against Branch Chief Michael Gunn and a formal EEO complaint against Paul Quander.[3]  Am. Compl. ¶ 5.  Subsequently, on May 4, 2007,[4] Williams informed the plaintiff that there were concerns about his behavior and that he was being placed on administrative leave pending an investigation.  *Id.*  The plaintiff was told that he was required to meet with CSOSA's Office of Professional Responsibility ("OPR") no later than May 9, 2007.  *Id*. ¶ 6.  When the plaintiff arrived at CSOSA on May 9, he was stopped at a security checkpoint and prohibited from entering the building.  *Id*. ¶ 7.  Later, armed security officers escorted the plaintiff to a room within the building.  *Id*.

The plaintiff alleges that while he was in the building, Holloway called the Metropolitan Police Department ("MPD") falsely complaining that the plaintiff was acting disorderly and that he had no permission to be on CSOSA premises.  *Id*.  At the direction of Holloway and Williams, the plaintiff was detained and prevented from leaving CSOSA pending the arrival of MPD.  *Id*.  After MPD arrived, the plaintiff was arrested, charged with unlawful entry and transported to MPD for booking.  *Id*.  The criminal charges against the plaintiff were subsequently dismissed.  *Id*. ¶ 8.

The plaintiff contends that in May 2007, Spivey asked Barnes to write a letter comparing the plaintiff's behavior to an unstable student at Virginia Tech, who killed thirty-three people

---

[3] Although neither party states what position Quander held at CSOSA, exhibit 4 of the defendants' motion to dismiss indicates that he was the Director of CSOSA at least during November 2007.  Defs.' Mot., Ex. 4.

[4] Neither party provides any details concerning the time period from August 2006 to May 2007.  *See generally* Am. Compl.; Defs.' Mot.; Pl.'s Opp'n to Defs.' Mot. to Dismiss the Pl.'s Am. Compl ("Pl.'s Opp'n").

before killing himself in April 2007.[5]  *Id*. ¶ 9.  On May 14, 2007, Barnes wrote such a letter indicating that she feared for her safety because the plaintiff constantly watched the guards and cameras at CSOSA very closely and wrote down his observations.  *Id*. ¶ 9.  The plaintiff was terminated from CSOSA on May 13, 2008.[6]  Am. Compl. ¶ 4.

### B.    Procedural History

This action was commenced in the Superior Court of the District of Columbia and removed to this court.  *See* Notice of Removal.  Pursuant to the Federal Employees Liability Reform and Tort Compensation Act of 1988 ("Westfall Act"), the Chief of the Civil Division of the United States Attorney's Office for the District of Columbia certified ("Westfall Certification") that at all relevant times the defendants were acting within the scope of their employment.  Defs.' Mot., Ex. 1.

After the defendants filed their initial motion to dismiss, the plaintiff filed an amended complaint.  In the amended complaint the plaintiff alleges four common law tort claims: defamation, false imprisonment, false arrest and malicious prosecution.  *See generally* Am. Compl.  In addition, the plaintiff brings a claim under § 1983 alleging a violation of his Fourth and Fourteenth Amendment rights.  *Id.*  Finally, the plaintiff brings claims for hostile work environment and retaliation and a claim under § 1983 for violation of his civil rights.  *Id.*  The defendants filed the instant motion to dismiss the amended complaint on October 24, 2008, which the plaintiff opposes.  The court turns now to the parties' arguments.

---

[5]   According to the plaintiff, Spivey also solicited a similar letter from another individual, Monica Crichlow, who refused to provide one.  Am. Compl. ¶ 9.

[6]   The plaintiff offers no factual details concerning the time period between his arrest on May 9, 2007 and his termination on May 13, 2008.  *See generally* Am. Compl.; Pl.'s Opp'n.

### III.     ANALYSIS

#### A.     Legal Standard for a Motion to Dismiss

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). The complaint need only set forth a short and plain statement of the claim, giving the defendant fair notice of the claim and the grounds upon which it rests. *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003) (citing FED. R. CIV. P. 8(a)(2) and *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Such simplified notice pleading is made possible by the liberal opportunity for discovery and the other pre-trial procedures established by the Rules to disclose more precisely the basis of both claim and defense to define more narrowly the disputed facts and issues." *Conley*, 355 U.S. at 47-48 (internal quotation marks omitted). It is not necessary for the plaintiff to plead all elements of his prima facie case in the complaint, *Swierkiewicz v. Sonoma N.A.*, 534 U.S. 506, 511-14 (2002), or "plead law or match facts to every element of a legal theory," *Krieger v. Fadely*, 211 F.3d 134, 136 (D.C. Cir. 2000) (internal quotation marks and citation omitted).

Yet, the plaintiff must allege "any set of facts consistent with the allegations." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007) (abrogating the oft-quoted language from *Conley*, 355 U.S. at 45-56, instructing courts not to dismiss for failure to state a claim unless it appears beyond doubt that "no set of facts in support of his claim [] would entitle him to relief"); *Aktieselskabet AF 21. Nov. 2001 v. Fame Jeans, Inc.*, 525 F.3d 8, 16 n.4 (D.C. Cir. 2008) (affirming that "a complaint needs *some* information about the circumstances giving rise to the claims"). While these facts must "possess enough heft to 'sho[w] that the pleader is entitled to relief,'" a complaint "does not need detailed factual allegations." *Twombly*, 127 S. Ct. at 1964, 1966. In resolving a Rule 12(b)(6) motion, the court must treat the complaint's factual

allegations – including mixed questions of law and fact – as true and draw all reasonable inferences therefrom in the plaintiff's favor.  *Macharia v. United States*, 334 F.3d 61, 64, 67 (D.C. Cir. 2003); *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003); *Browning*, 292 F.3d at 242.  While many well-pleaded complaints are conclusory, the court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations.  *Warren v. District of Columbia*, 353 F.3d 36, 40 (D.C. Cir. 2004); *Browning*, 292 F.3d at 242.

### B. Counts I – IV: Defamation, False Imprisonment, False Arrest and Malicious Prosecution

#### 1. The Defendants Were Acting Within the Scope of Their Employment

As an initial matter, the plaintiff challenges the Westfall Certification.  For the reasons stated below, the court determines that the plaintiff has not pled sufficient facts to overcome the presumption under the Westfall Certification that the defendants were acting within the scope of their employment.

##### a. Legal Standard for Immunity of Federal Officers Under the Westfall Act

The Westfall Act confers immunity on federal employees "by making [a Federal Tort Claims Act ("FTCA")] action against the Government the exclusive remedy for torts committed by Government employees in the scope of their employment."  *United States v. Smith*, 499 U.S. 160, 163 (1991); 28 U.S.C. § 2679(b)(1).  The statute provides that:

> [u]pon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

28 U.S.C. § 2679(d)(1).  In a case in which the Attorney General, or by designation the United

States Attorney in the district in which the claim is brought, files a certification that the original defendant was acting within the scope of his employment, such certification has the following consequences: (1) if the suit originated in state court, then the Attorney General or his designee is required to remove it to federal court; (2) the United States shall be substituted as the sole defendant; and (3) if the plaintiff has not brought suit pursuant to the FTCA, the suit is converted into one against the United States under the FTCA.  28 U.S.C. § 2679(d)(2); 28 C.F.R. § 15.3(a) (2002); *Haddon v. United States*, 68 F.3d 1420, 1423 (D.C. Cir. 1995) *abrogated on other grounds by Osborn v. Haley*, 549 U.S. 225 (2007).  The certification is conclusive for purposes of removal; however, the substitution and conversion consequences are subject to judicial review; that is, they are contingent on whether the court finds that the original defendant acted within the scope of his employment.  *See Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 434 (1995) (stating that "[t]he Attorney General's certification that a federal employee was acting within the scope of his employment . . . does not conclusively establish as correct the substitution of the United States as defendant in place of the employee"); *Haddon*, 68 F.3d at 1423 (noting that "the federal court may independently determine whether the employee acted within the scope of employment and, therefore, whether to substitute the federal government as the proper defendant").

To determine whether a federal employee was acting within the scope of his employment, a federal court must apply the law of the state where the tortious act occurred.  *Tarpeh-Doe v. United States*, 28 F.3d 120, 123 (D.C. Cir. 1994); *Garber v. United States*, 578 F.2d 414, 415 (D.C. Cir. 1978).  The law of the District of Columbia, which is where the alleged tortious acts in this case occurred, is drawn from the Restatement (Second) of Agency § 228 ("Restatement §228").  *Haddon*, 68 F.3d at 1423.  The Restatement provides:

7

> [c]onduct of a servant is within the scope of employment if, but only if: (1) it is of the kind he is employed to perform; (2) it occurs substantially within the authorized time and space limits; (3) it is actuated, at least in part, by a purpose to serve the master; and (4) if force is intentionally used by the servant against another, the use of force is not unexpected by the master.

Restatement § 228(1). When the court reviews the validity of a certification filed by the Attorney General or his designee, the certification is entitled to "prima facie effect" that the defendants acted within the scope of their employment. *Kimbro v. Velten*, 30 F.3d at 1509 (D.C. Cir. 1994) (internal citations omitted). The burden then shifts to the plaintiff to prove by a preponderance of the evidence that the defendants acted outside the scope of their employment. *Id.* at 1509; *Schneider v. Kissinger*, 310 F. Supp. 2d 251, 264 (D.D.C. 2004).

The plaintiff, however, may not be able to "discharge this burden without some opportunity for discovery." *Stokes v. Cross*, 327 F.3d 1210, 1214 (D.C. Cir. 2003). Therefore, "to obtain discovery and an evidentiary hearing, [the plaintiff] need only [allege] sufficient facts that, taken as true, would establish that the defendants' actions exceeded the scope of their employment." *Id.* at 215. Nevertheless, "not every complaint will warrant further inquiry into the scope-of-employment issue." *Id.* at 216. The court must recognize the congressional intent "to protect federal employees from the uncertain and intimidating task of defending suits that challenge conduct within the scope of their employ." *Brown v. Armstrong*, 949 F.2d 1007, 1011 (8th Cir. 1991).

### b. The Plaintiff Does Not Allege Sufficient Facts That, If True, Would Overcome the Presumption that the Defendants Were Acting Within the Scope of Their Employment

The plaintiff maintains that there is a factual dispute about the scope of the defendants' employment and that he should be granted some discovery to show that the defendants acted "maliciously" and "contrary to their employer's interest." Pl.'s Opp'n at 4. Specifically, he

seeks depositions of the defendants and other witnesses that would indicate "their intent to cause [the plaintiff's] arrest and termination." *Id.*

The defendants retort that the plaintiff has not alleged sufficient facts that, if true, would demonstrate that they were acting outside the scope of employment under the laws of the District of Columbia and therefore no discovery is necessary. Defs.' Reply at 3. Furthermore, the defendants aver that the plaintiff's allegations are not sufficient to rebut the Westfall Certification. *See id.* at 5-6.

### i.   The Defendants' Actions Were of the Kind They Were Employed to Perform

Pursuant to § 228 of the Restatement, the defendants' actions must be analyzed under three applicable criteria to determine whether they have acted within the scope of their employment.[7] Regarding the Restatement's first criterion, in order "to qualify as conduct of the kind [the defendants were] employed to perform, the [defendants'] actions must have been either 'of the same general nature as that authorized' or '*incidental* to the conduct authorized.'" *Haddon*, 68 F.3d at 1424 (emphasis in original) (quoting Restatement (Second) of Agency § 229). Though it is unclear from the parties' arguments what the defendants' exact responsibilities are at CSOSA, *see generally* Am. Compl.; Defs.' Mot., because the amended complaint does allege at least some tortious conduct by the defendants, and because the court draws all reasonable inferences in favor of the plaintiff, *Macharia*, 334 F.3d at 64, 67, the court determines that the defendants' actions are not of the same general nature as they were authorized to perform.

---

[7]   The final criterion of Restatement § 228 only applies "if force is intentionally used by the servant." Because the plaintiff does not allege that force was intentionally used by any of the defendants, *see generally* Am. Compl., this criterion does not apply.

9

This criterion can still be satisfied, however, if the defendants' conduct was "incidental to the conduct authorized" as employees of CSOSA. *Haddon*, 68 F.3d at 1424. "According to the D.C. Court of Appeals, conduct is 'incidental' to an employee's legitimate duties if it is 'foreseeable.'" *Id.* (citing *Weinberg v. Johnson*, 518 A.2d 985, 990 (D.C. 1986); *District of Columbia v. Coron,* 515 A.2d 435, 438 (D.C. 1986)). "To be foreseeable, the torts must be 'a direct outgrowth of the employee's instructions or job assignment.'" *Id.* (quoting *Boykin v. District of Columbia*, 484 A.2d 560, 562 (D.C. 1984)).

Precedent compels this court to construe the term "incidental" broadly. This Circuit has held, for example, that a mattress delivery man who raped and beat a customer after engaging in a dispute about her method of payment was held to be acting within the scope of his employment. *Lyon v. Carey*, 533 F.2d 649, 651-52 (D.C. Cir. 1976). The Circuit explained that "deliverymen, endeavoring to serve their masters, are likely to be in situations of friction with customers, and . . . these foreseeable altercations may precipitate violence . . . even though the particular type of violence was not in itself anticipated or foreseeable." *Id.* Similarly, the D.C. Court of Appeals has held that a laundromat employee who engaged in a dispute with a laundromat patron, while the employee was removing clothes from the washing machine as his job required, was acting within the scope of his employment when he subsequently shot the patron. *Johnson v. Weinberg*, 434 A.2d 404, 406 (D.C. 1981). This Circuit has stated that *Lyon* and *Johnson* "mark the outer limits of scope of employment." *Haddon*, 68 F.3d at 1425 (citing *Boykin,* 484 A.2d at 563). In contrast, in *Haddon*, the Circuit concluded that a White House electrician who threatened a White House associate chef because the chef had filed an employment discrimination claim against a different White House employee did not commit a tort that was "a direct outgrowth" of the electrician's duties. 68 F.3d at 1425. Importantly, the

court noted that "the electrician's threat did not stem from a dispute over the performance of *his* work." *Id.* (emphasis in original); *see also Koch v. United States*, 209 F. Supp. 2d 89, 93 (D.D.C. 2002) (holding that the defendants' actions were within his scope of employment because "the alleged incident upon which this suit is premised arose solely because of a dispute about the work performances of [the] plaintiff" and the defendant).

Like the events in *Koch*, the incidents that the plaintiff describes in his amended complaint arose from a dispute about his work performance. *See generally* Am. Compl. Specifically, the plaintiff was informed by Williams that there were concerns about his behavior, that he was being placed on administrative leave and that he should present himself for an investigatory interview to be held by May 9, 2007 at CSOSA's OPR. Am. Compl. ¶ 6. It was this appearance at CSOSA that resulted in Williams and Holloway calling the MPD and having the plaintiff arrested, and it was the investigation of the plaintiff's job performance that resulted in Spivey allegedly soliciting false statements about the plaintiff. *Id.* ¶¶ 7, 9. Because the defendants' actions stemmed from a dispute about the plaintiff's job performance, they were incidental to the defendants' employment at CSOSA. *See Haddon*, 68 F.3d at 1425; *Koch*, 209 F. Supp. 2d at 93.

### ii. The Defendants' Actions Occurred Substantially Within the Authorized Time and Space Limits

Because the plaintiff fails to allege that the defendants' conduct occurred outside of CSOSA or outside of normal working hours, the criterion that conduct "occur[] substantially within the authorized time and space limits" is met. Restatement § 228. Williams instructed the plaintiff to appear at CSOSA for a meeting with the OPR and when the plaintiff arrived for the meeting he was arrested at CSOSA after Holloway called the MPD. Am. Compl. ¶¶ 6-7. In

addition, with respect to Spivey and Barnes, the plaintiff does not allege that their tortious conduct occurred outside of CSOSA or outside of normal working hours.  *See generally* Am. Compl.  Therefore, the second criterion of the Restatement § 228 is satisfied.

### iii.     The Defendants' Actions Were Actuated, at Least in Part, By a Purpose to Serve the Master

With respect to the third criterion of the Restatement § 228, the defendants' conduct was "actuated, at least in part, by a purpose to serve the master."  *See* Restatement § 228.  As previously mentioned, *Lyon* and *Johnson* mark the outer limits of a broad range of conduct by employees that is at least partially meant to serve their employer.  The defendant in *Lyon* was acting, in part, to serve his employer when he attacked and raped a customer over a dispute about payment to the employer.  533 F.2d at 651-52.  The defendant in *Johnson* was also acting, in part, to serve his employer when he shot a laundromat customer because the dispute arose from the defendant's duty to remove clothes from washing machines.  434 A.2d at 406, 408-09.  Here, the plaintiff was suspended from CSOSA because of concerns about his behavior, Am. Compl. ¶ 6, and, even taking the plaintiff's allegations as true, the defendants' actions in removing the plaintiff from CSOSA and highlighting his allegedly questionable behavior clearly were meant, at least in part, to benefit CSOSA.  Am. Compl. ¶¶ 7, 9.  Thus the defendants' conduct falls within the scope of their employment.  *See* Restatement § 228.

Because the court holds that the plaintiff has not pled sufficient facts that, taken as true, show that the defendants acted outside the scope of their employment under the laws of the District of Columbia, the court denies the plaintiff's request to conduct additional discovery on the scope of employment issue and concludes that the defendants were acting within the scope of their employment.  *See Koch*, 209 F. Supp. 2d at 93.  Accordingly, the court substitutes the

United States as the sole defendant and dismisses the individual defendants with respect to Counts I-IV. *See id.*

### 2. The Plaintiff Has Failed to Exhaust His Administrative Remedies

#### a. Legal Standard for Exhaustion of Administrative Remedies

The FTCA "grants federal district courts jurisdiction over claims arising from certain torts committed by federal employees in the scope of their employment, and waives the government's sovereign immunity from such claims." *Sloan v. Dep't of Housing & Urban Dev.*, 236 F.3d 756, 759 (D.C. Cir. 2001) (citing 28 U.S.C. §§ 1346(b), 2674). "The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies." *McNeil v. United States*, 508 U.S. 106, 113 (1993) (upholding the district court's dismissal of an unexhausted FTCA claim for lack of jurisdiction); *accord Grant v. Sec'y, U.S. Dep't of Veterans Affairs*, 2004 WL 287125, at *1 (D.C. Cir. Feb. 4, 2004). Under the FTCA, exhaustion occurs once a claimant has presented the appropriate federal agency with a claim describing the alleged injury with particularity and setting forth a "sum certain" of damages, and the agency has (1) denied the claim in writing or (2) failed to provide a final disposition within six months of the claim's filing. 28 U.S.C. § 2675(a); *Grant*, 2004 WL 287125, at *1. The presentment requirement "allow[s] the agency to investigate and assess the strength of the claim [and] make an informed decision whether to attempt settlement negotiations." *Grant*, 2004 WL 287125, at *1 (citing *GAF Corp. v. United States*, 818 F.2d 901, 919-20 (D.C. Cir. 1987)).

#### b. The Plaintiff Did Not Exhaust His Administrative Remedies

The defendants contend that the plaintiff failed to exhaust his administrative remedies because he did not fulfill the internal complaint procedures of CSOSA. Defs.' Mot. at 10-11. The plaintiff does not address this argument. *See generally* Pl.'s Opp'n. Accordingly, the court

concludes that the plaintiff has conceded this point.  *See Twelve John Does v. District of Columbia*, 117 F.3d 571, 577 (D.C. Cir. 1997) (noting that arguments not addressed may be treated as conceded).

Because the plaintiff has failed to offer any indication that he exhausted his administrative remedies, and the exhaustion of administrative remedies is a jurisdictional requirement, the court dismisses the plaintiff's claims with respect to Counts I-IV.[8]  *See McNeil*, 508 U.S. at 113.

### C. Count V: Violation of Fourth and Fourteenth Amendment Rights

The plaintiff brings suit under § 1983 alleging a violation of his Fourth and Fourteenth Amendment constitutional rights.  The statute provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

This Circuit has noted that § 1983, "by [its] terms, do[es] not apply to actions against the United States."  *Hohri v. United States*, 782 F.2d 227, 245 n.43 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64, 107; *see also United States v. Timmons*, 672 F.2d 1373, 1380 (11th

---

[8]  Both parties also argue, at some length, over whether the United States has waived sovereign immunity for three of the four tort claims: false imprisonment, false arrest and malicious prosecution.  The defendants contend that the United States has not waived sovereign immunity for those torts.  Defs.' Mot. at 6.  The plaintiff counters that there is an exception for "law enforcement officers" under the FTCA in cases which the government has waived its sovereign immunity for those torts committed by "law enforcement officers," and that the defendants are indeed "law enforcement officers."  Pl.'s Opp'n at 6.  Because the court dismisses the plaintiff's amended complaint for failure to exhaust administrative remedies, it does not reach this issue.

Cir. 1982) (holding that "it is well established . . . that the United States has not waived its immunity to suit under the provisions of the civil rights statutes").

The court has determined that the defendants were acting within the scope of their employment as federal employees of CSOSA. *See supra* Part III.B.1.b. Because CSOSA is a federal executive branch agency, Defs.' Mot. at 1 n.1, and all four defendants are employees of CSOSA, *id.* at 1, the defendants are not persons "under color of any statute . . . of any *State* or *Territory* or the *District of Columbia*." *See* 42 U.S.C. § 1983 (emphasis added). Because § 1983 does not apply to persons that are operating under color of statutes of the United States, *see Hohri*, 782 F.2d at 245 n.43, and the defendants, as employees of CSOSA, are operating under federal statute, *see* Defs.' Mot. at 1 n.1, the plaintiff cannot assert his Fourth and Fourteenth Amendment claims against the defendants through the lens of § 1983. *See* 42 U.S.C. § 1983; *Hohri*, 782 F.2d at 245 n.43. Thus, the court dismisses count five of the plaintiff's amended complaint.

### D.  Count VI: Hostile Work Environment, Retaliation and Violation of Civil Rights Claims Brought Under 42 U.S.C. § 1983

The plaintiff contends that the defendant subjected him to a hostile work environment, retaliated against him and violated his civil rights under § 1983 because he filed an informal EEO complaint against Gunn and a formal EEO complaint against Quander. Am. Compl. ¶ 5. The defendants argue that the plaintiff's workplace discrimination claims must be brought under Title VII, not § 1983. Defs.' Mot. at 12. The court agrees.

In passing Title VII, Congress intended to create "an exclusive, pre-emptive administrative and judicial scheme for the redress of federal employment discrimination." *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 829 (1976). "Although *Brown* dealt with a § 1981

claim, courts have since extended the *Brown* reasoning to reject litigants' efforts to initiate discrimination claims against the federal government under the Constitution or statutes other than Title VII." *Brug v. Nat'l Coalition for Homeless*, 45 F. Supp. 2d 33, 42 (D.D.C. 1999) (dismissing discrimination claims brought under § 1983, the Fifth Amendment and the Fourteenth Amendment against federal employees).  This Circuit has "repeatedly held that federal employees may not bring suit under the Constitution for employment discrimination that is actionable under Title VII." *Ethnic Employees of Library of Cong. v. Boorstin*, 751 F.2d 1405, 1415 (D.C. Cir. 1985) (citing *Kizas v. Webster,* 707 F.2d 524, 542 (D.C. Cir. 1983); *Lawrence v. Staats,* 665 F.2d 1256, 1257, 1259 (D.C. Cir. 1981); *Torre v. Barry,* 661 F.2d 1371, 1372, 1374 (D.C. Cir. 1981); *Hofer v. Campbell,* 581 F.2d 975, 976, 978 (D.C. Cir. 1978); *Richardson v. Wiley,* 569 F.2d 140, 141 (D.C. Cir. 1977); *Morris v. Washington Metropolitan Area Transit Auth.,* 702 F.2d 1037, 1039-40 (D.C. Cir. 1983)).

     Because the plaintiff's hostile work environment, retaliation and § 1983 claims arise out of employment discrimination allegedly stemming from his filing of EEO complaints against Gunn and Quander, s*ee* Am. Compl. ¶ 5, the defendants' conduct is only actionable under Title VII.  The court therefore dismisses, without prejudice, the plaintiff's complaint with respect to Count VI.  *See Brown*, 425 U.S. at 829; *Ethnic Employees of Library of Cong.*, 751 F.2d at 1415.

## IV.     CONCLUSION

For the foregoing reasons, the court grants the defendants' motion to dismiss the amended complaint and denies as moot the defendant's original motion to dismiss. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 3rd day of August, 2009.

RICARDO M. URBINA
United States District Judge
